## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION

| | | |
|---|---|---|
| DANTE BENJAMIN HAYWARD, | ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV423-045 |
| | ) | |
| BRIAN MUNDY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

*Pro se* plaintiff Dante Benjamin Hayward has filed this 42 U.S.C. § 1983 case asserting claims arising from his 2017 arrest in Effingham County, Georgia and subsequent prosecution. *See* doc. 1-1 at 12-15. The Court granted Hayward leave to proceed *in forma pauperis*, doc. 5, and he returned the required forms, docs. 7 & 8. The Court must, therefore, screen his Complaint pursuant to 28 U.S.C. § 1915A.

Because the Court applies Federal Rule of Civil Procedure 12(b)(6) standards in screening a complaint pursuant to § 1915A, *Leal v. Ga. Dep't of Corr.*, 254 F.3d 1276, 1278-79 (11th Cir. 2001), allegations in the Complaint are taken as true and construed in the light most favorable to the plaintiff. *Bumpus v. Watts*, 448 F. App'x 3, 4 n.1 (11th Cir. 2011).

Conclusory allegations, however, fail. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (discussing a Rule 12(b)(6) dismissal). As Hayward is proceeding *pro se*, his pleadings are held to a less stringent standard than pleadings drafted by attorneys and are liberally construed. *See Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011).

Hayward alleges that he was subjected to a traffic stop by defendant Brian Mundy, an officer of the Effingham County Sheriff's Department, "[o]n March 31, 2017." Doc. 1-1 at 12. Mundy removed Hayward from his vehicle, and after Hayward consented, conducted a frisk. *Id.* Hayward alleges that Mundy exceeded the permissible scope of such a frisk by reaching into his pocket. *Id.* After Hayward objected, Mundy "arrested, searched, tased [sic], assaulted and battered . . . while handcuffing [Hayward] without a warrant . . . ." *Id.* at 12-13. Hayward was then transported to Effingham County Jail and detained. *Id.* at 13. Hayward alleges that Mundy "did not take Plaintiff to a magistrate judge when he had an opportunity to do so." *Id.* While detained, Hayward alleges that he was tazed by an Officer Cubbedge. *Id.* A little more than two weeks after his arrest, he was taken before Judge F. Gates Peed for

2

a "preliminary / [b]ond hearing." *Id.* Judge Peed granted a bond, though it is not clear whether Hayward was released. *Id.* at 14.

Hayward alleges that, at some point, he was indicted on charges "that stemmed from the false arrest and illegal search and seizure . . . ." Doc. 1-1 at 14. He was arrested "for warrant on previous charges," presumably those arising from the 2017 arrest, "[o]n December 18, 2018." *Id.* His attorney filed a motion to suppress evidence, based on the allegations that the traffic stop and search violated his Fourth Amendment rights, in May 2019. *Id.* Judge Peed held a bench trial on the charges in August 2019 and denied the suppression motion shortly after. *Id.* Hayward alleges that, at trial, "Mundy switched his testimony," about the circumstances of the stop and search. *Id.* Hayward was convicted and sentenced to forty years of incarceration, a sentence he is still serving. *Id.* He has "had a Motion for New Trial pending since August 8, 2019," but the court has not acted on that motion. *Id.* at 15.

## I.    Improper Defendants

In addition to several Effingham County Sheriff's Department officers, Hayward has named as defendants Judge Peed, a "John Doe" magistrate judge who signed the warrant for his arrest, doc. 1-1 at 15,

and Brian Deal, who appears to have been the attorney prosecuting the case, *see id.* at 18-19.  Judge Peed, the unnamed magistrate judge, and Deal are all immune from claims arising from actions taken in their judicial and prosecutorial roles, respectively.

Prosecutors are immune from § 1983 liability where their alleged malfeasance stems from their "function as advocate." *Jones v. Cannon*, 174 F.3d 1271, 1281 (11th Cir. 1999).  They enjoy "absolute immunity for the initiation and pursuit of criminal prosecution," even when accused of perjury.  *Id.; see also Imbler v. Pachtman*, 424 U.S. 409 (1976) (prosecutorial immunity applied to allegations prosecutor knowingly used perjured testimony and suppressed material evidence at trial); *Jackson v. Capraun*, 534 F. App'x 854, 859 (11th Cir. 2013) (prosecutor entitled to absolute immunity for initiating prosecution even if he did so with malicious intent); *Fullman v. Graddick*, 739 F.2d 553, 559 (11th Cir. 1984) (determining prosecutor entitled to immunity from § 1983 liability for allegedly conspiring to withhold evidence and to create and proffer perjured testimony).

Prosecutorial immunity "extends to a prosecutor's 'acts undertaken . . . in preparing for the initiation of judicial proceedings or for trial, and

4

which occur in the course of his role as an advocate for the State.'" *Jones*,

174 F.3d at 1281 (citation omitted).

> Prosecutorial immunity applies, for instance, to the prosecutor's actions in initiating a prosecution and presenting the State's case.  A prosecutor is immune for malicious prosecution.  Prosecutors are immune for appearances before a court and conduct in the courtroom, including examining witnesses and presenting evidence in support of a search warrant during a probable cause hearing.

*Hart v. Hodges*, 587 F.3d 1288, 1295 (11th Cir. 2009) (citations omitted).

Judges are also generally immune from suit unless they act in the

"clear absence of all jurisdiction." *Stump v. Sparkman*, 435 U.S. 349,

356-57 (1978); *Sibley v. Lando*, 437 F.3d 1067, 1070 (11th Cir.

2005); *Simmons v. Conger*, 86 F.3d 1080, 1084-85 (11th Cir. 1996).  This

immunity applies even when the judge's acts are in error, malicious, or

were in excess of his or her jurisdiction.  *See Stump*, 435 U.S. at 356;

*Harris v. Deveaux*, 780 F.2d 911, 914 (11th Cir. 1986).  "[J]udicial

immunity is an immunity from suit, not just from ultimate assessment

of damages." *Mireles v. Waco*, 502 U.S. 9, 11 (1991).  Georgia magistrate

judges are also protected by judicial immunity.  *See Harvin v. Aten*, 2018

WL 10509901, at *2 (N.D. Ga. Oct. 30, 2018) (citing, *inter alia.*, *DeWayne*

*v. State of Georgia, Inc.*, 2013 WL 12310839, at *5 (N.D. Ga. Dec. 10,

5

2013)) (dismissing claims against a Georgia magistrate judge based on judicial immunity).

Hayward's allegations against Judge Peed, the anonymous magistrate judge, and Deal all clearly arise from those defendants' actions in their respective judicial and prosecutorial capacities. Hayward's allegations against Deal, to the extent that they are discernable, expressly state that he "was acting as the prosecutor," in the bond hearing Hayward alleges violated his due-process rights.  Doc. 1-1 at 14.  His allegations that Judge Peed somehow violated his rights during his bond hearing and in disposing of his motion to suppress clearly implicate judicial actions.  *See id.* at 14-15.  Finally, his allegation that the anonymous defendant "was the acting magistrate that signed the arrest warrant," presumably leading to his arrest in 2018, directly implicates a protected judicial function.  *Id.* at 15; *see also id.* at 14 (alleging he was "arrested for warrant on previous charges," in 2018).  All of those defendants, therefore, enjoy immunity against Hayward's § 1983

claims.  The claims against them are, therefore, **DISMISSED**.  *See, e.g.,* 28 U.S.C. § 1915A(b)(2).

Hayward also asserts claims against Effingham County Sheriff McDuffie.  *See* doc. 1-1 at 18.  He states that McDuffie is "responsible for his [d]eput[ies] acting on his behalf[ ] who[ ] carried out these unlawful acts, and [is] responsible for [o]peration [and] policies and procedures at the Effingham County Jail."  *Id.*  It is well-settled that "[s]ection 1983 claims may not be brought against supervisory officials solely on the basis of vicarious liability or *respondeat superior.*"  *Averhart v. Warden,* 590 F. App'x 873, 874 (11th Cir. 2014) (citing *Keating v. City of Miami,* 598 F.3d 753, 762 (11th Cir. 2010)).  Rather, "[a] supervisor can be held liable under § 1983 if he personally participates in the alleged constitutional violation or if a causal connection exists between his acts and the constitutional infirmity."  *Id.*

> A causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation and he fails to do so; when the supervisor's improper custom or policy leads to deliberate indifference to constitutional rights; or when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the

> subordinates would act unlawfully and failed to stop them
> from doing so.

*Douglas v. Yates*, 535 F.3d 1316, 1322 (11th Cir. 2008).  Hayward does not allege any "widespread abuse," and has not pointed to any custom or policy, or other direction from McDuffie, related to the events alleged. His claims against Sheriff McDuffie are, therefore, **DISMISSED**.

## II.    Request for Prosecution

Hayward's Complaint seeks, in addition to monetary damages, "that the Defendants be prosecuted for the unlawful acts and crimes that they have committed."  Doc. 1-1 at 20.  Private citizens are simply not permitted to initiate criminal actions in federal court.  *See, e.g., Lopez v. Robinson,* 914 F.2d 486, 494 (4th Cir. 1990) ("No citizen has an enforceable right to institute a criminal prosecution." (citing *Linda R. v. Richard V.*, 410 U.S. 614, 619 (1973) ("In American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."))); *Cok v. Cosentino*, 876 F.2d 1, 2 (1st Cir. 1989) ("[A] private citizen has no authority to initiate a federal criminal prosecution.").  The Court is also without authority to order the United States Attorney, or indeed any other law enforcement officer, to initiate a prosecution.  *See, e.g., Inmates of Attica Corr. Facility*

8

*v. Rockefeller*, 477 F.2d 375, 379 (2nd Cir. 1973) (citations omitted) ("federal courts have traditionally and, to our knowledge, uniformly refrained from overturning, at the insistence of a private person, discretionary decisions of federal prosecuting authorities not to prosecute persons regarding whom a complaint of criminal conduct is made[,] . . . even in cases . . .where . . . serious questions are raised as to the protection of the civil rights and physical security of a definable class of victims of crime and as to the fair administration of the criminal justice system."). Such orders would violate the Constitution's separation of powers between the Executive and Judicial Branches. *See id.* at 379-80 (quotes and cite omitted) (the United States Attorney, although a member of the bar and an officer of the court, "is nevertheless an executive official of the Government, and it is as an officer of the executive department that he exercises a discretion as to whether or not there shall be a prosecution in a particular case."). Hayward's claims requesting that defendants be "prosecuted" are **DISMISSED**. *See* doc. 1-1 at 20.

9

### III.   Remaining Claims

Hayward alleges facts that implicate a number of potential § 1983 claims against the remaining defendants Mundy, Grovenstein, and unidentified law enforcement and jail defendants.  *See* doc. 1-1 at 2, 15-17.   However, all of those claims arose during his 2017 arrest and incarceration.  *See id.* at 12-13.  Since, as explained below, any claim that accrued in 2017 is time-barred, they are all **DISMISSED**.

Section 1983 claims are subject to the statute of limitations applicable to personal-injury torts under state law.  *Wallace v. Kato*, 549 U.S. 384, 387 (2007) (internal citation omitted).  Under Georgia law, the statute of limitations for such claims is two years.  O.C.G.A. § 9-3-33; *see also Williams v. City of Atlanta*, 794 F.2d 624, 626 (11th Cir. 1986).  Generally, the statute of limitations for § 1983 claims begins to run when facts supporting the cause of action are or should be reasonably apparent to the plaintiff.  *Brown v. Ga. Bd. of Pardons & Paroles*, 335 F.3d 1259, 1261 (11th Cir. 2003) (*per curiam*).  Although the statute of limitations is often an affirmative defense, it is applicable at screening where it is apparent on the face of a complaint.  *See, e.g., Jones v. Bock*, 549 U.S.

199, 215 (2007). For purposes of this screening analysis, Hayward's Complaint is deemed filed February 13, 2023.[1] *See* doc. 1-1 at 11, 20.

The Fourth Amendment "encompasses the right to be free from excessive force during the course of a criminal apprehension." *Corbitt v. Vickers*, 929 F.3d 1304, 1315 (11th Cir. 2019) (internal quotation marks and citation omitted). "To establish a Fourth Amendment claim for excessive force, a plaintiff must allege (1) that a seizure occurred and (2) that the force used to effect the seizure was unreasonable." *Id.* (internal quotation marks and citation omitted). Similarly, a pretrial detainee's Fourteenth Amendment rights are violated if they are subjected to excessive force. *See, e.g., Patel v. Lanier Cnty. Ga.*, 969 F.3d 1173, 1181 (11th Cir. 2020). Hayward alleges that he was subjected to excessive force, which he refers to as "assault and battery," both during his arrest on March 31, 2017, *see* doc. 1-1 at 12, 16-17, and during his detention at Effingham County Jail on April 14, 2017, *id.* at 13, 17. The excessive

---

[1] "Under the 'prison mailbox rule,' a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing. *Williams v. McNeil*, 557 F.3d 1287, 1290 n. 2 (11th Cir. 2009). "Absent evidence to the contrary in the form of prison logs or other records, [courts] will assume that [a prisoner's filing] was delivered to prison authorities on the day he signed it . . . ." *Washington v. United States*, 243 F.3d 1299, 1301 (11th Cir. 2001).

force claims, therefore, accrued, and the two-year period began to run on those dates.  It, therefore, ran out on both claims years before he filed his Complaint.  His excessive-force claims are **DISMISSED** as time-barred.

Hayward's false arrest and false imprisonment claims are also time barred.  False arrest and false imprisonment overlap; the former is a species of the latter." *Wallace*, 549 U.S. at 388.  "[A] federal . . . claim for false arrest requires the plaintiff to show the absence of probable cause at the time of the arrest." *Hesed-El v. McCord*, 829 F. App'x 469, 472 (11th Cir. 2020).  A § 1983 claim for false imprisonment is "based on a detention pursuant to that arrest [that lacked probable cause]." *Ortega v. Christian*, 85 F.3d 1521, 1526 (11th Cir. 1996); *see also Wallace*, 549 U.S. at 389 ("[F]alse imprisonment consists of detention without legal process.").  As the Eleventh Circuit has explained:

> A § 1983 claim of false imprisonment requires a showing of common law false imprisonment and a due process violation under the Fourteenth Amendment.  *See Cannon v. Macon County*, 1 F.3d 1558, 1562–63 (11th Cir.1993), modified on other grounds, 15 F.3d 1022 (1994).  The elements of common law false imprisonment are an intent to confine, an act resulting in confinement, and the victim's awareness of confinement.  *See id.* at 1562 n. 3.  The Fourteenth Amendment Due Process Clause includes the "right to be free from continued detention after it was or should have been known that the detainee was entitled to release." *Id.* at 1563;

*West v. Tillman*, 496 F.3d 1321, 1327 (11th Cir.2007) (per curiam).

*Campbell v. Johnson*, 586 F.3d 835, 840 (11th Cir. 2009).   "[F]alse imprisonment[, or false arrest,] ends once the victim becomes held *pursuant to such process*—when, for example, he is bound over by a magistrate or arraigned on charges."   *Wallace*, 549 U.S. at 389; *see also White v. Hiers*, 652 F. App'x 784, 786 (11th Cir. 2016).

Hayward alleges that the initial traffic stop and subsequent search and arrest lacked sufficient bases.  Whether the initial stop, search, and subsequent arrest lacked sufficient factual bases, however, Hayward's false arrest or false imprisonment claims arising from those events could not have lasted beyond the point that he was subjected to formal criminal process.  *See Wallace*, 549 U.S. at 389.  He alleges that he received a "preliminary / bond hearing" on May 16, 2017.  Doc. 1-1 at 13.  It, therefore, appears that Hayward's false arrest or false imprisonment ended, and the statute of limitations began to run, no later than May 16, 2017. The two-year period ran out, therefore, well before the Complaint was filed.  Hayward's false arrest or false imprisonment claims are, therefore, **DISMISSED** as time barred.

13

## IV.   State Law Claims

Although the Court construed Hayward's "assault and battery" claims above as asserting § 1983 excessive-force claims, they might also be construed as state-law tort claims. *See, e.g.,* O.C.G.A. §§ 51-1-13, 51-1-14.   Georgia law also recognizes claims for false arrest and false imprisonment. *See, e.g.,* O.C.G.A. § 51-7-1 (false arrest); O.C.G.A. § 51-7-20 (false imprisonment).   There is no independent basis for the Court to exercise jurisdiction over any state law claims, however. *See, e.g., Williams v. Morales*, 2018 WL 2087247, at \*3 (S.D. Ga. May 4, 2018). Since Hayward has not alleged any viable federal claim, the Court declines to exercise supplemental jurisdiction over any state-law tort claims. *See* 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a [state law] claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."); *see also, e.g., Mergens v. Dreyfoos*, 166 F.3d 1114, 1119 (11th Cir. 1999) ("[I]f the federal claims are dismissed prior to trial, [*United Mine Workers v.*] *Gibbs* strongly encourages or even requires dismissal of state claims." (internal quotation marks and citations omitted)).   Since the Court declines to exercise supplemental jurisdiction

over the possible state law claims, it does not consider whether those claims have been sufficiently pleaded.

In summary, all of Hayward's claims are **DISMISSED** as they name defendants who are immune or fail to state a claim upon which relief can be granted and do not appear amendable. *See* 28 U.S.C. § 1915A(b); *see, e.g., Jenkins v. Walker*, 620 F. App'x 709, 711 (11th Cir. 2015) ("[A] district court need not allow amendment if the amended complaint would still be subject to dismissal."). His Complaint, doc. 1, and this case, are, therefore, **DISMISSED**. The Clerk of Court is **DIRECTED** to **CLOSE** this case.

Finally, the Court must assess Hayward's filing fee. *See* 28 U.S.C. § 1915(b). Plaintiff's prisoner trust fund account statement reflects an average monthly balance and deposits of $0.00. Doc. 8 at 1. Based upon his furnished information, he does not owe an initial partial filing fee. *See* 28 U.S.C. § 1915(b)(1) (requiring an initial fee assessment "when funds exist," under a specific 20 percent formula). His account custodian shall set aside 20 percent of all future deposits to the account, then forward those funds to the Clerk each time the set aside amount reaches $10, until the balance of the Court's $350 filing fee has been paid in full.

In the event plaintiff is transferred to another institution, his present custodian shall forward a copy of this Order and all financial information concerning payment of the filing fee and costs in this case to plaintiff's new custodian.  The balance due from plaintiff shall be collected by the custodian at his next institution in accordance with the terms of the payment directive portion of this Order.[2]

**SO ORDERED,** this <u>21st</u> day of March, 2023.

CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

[2] The Clerk is **DIRECTED** to send this Order to plaintiff's account custodian.